Richard J. Cardamone, J.
This is an article 78 proceeding to review a determination of the New York State Commissioner of Social Welfare.
The petitioner, Arlethia Brown, is on welfare and is a resident of the City of Syracuse. She has four children and her husband, James S. Brown, has disappeared.
She made application to the Onondaga County Department of Social Services for funds to pay the costs of publication to commence an action for an annulment against her husband. This application was denied, and thereafter on June 26, 1968 a fair hearing was held pursuant to section 353 of the Social Services Law reviewing the decision of the local agency. On October 17, 1968 the New York State Department of Social Services affirmed the decision of the Onondaga County Department of Social Services, stating in its decision that a Social Services agency has no authority to pay the costs of publication of a summons in an action for a divorce [sic] and also stating “in addition, the applicant has an additional recourse in that she can proceed as a poor person under Article 11 of the CPLR”.
Petitioner’s proceeding under article 78 of the CPLR is brought to challenge this decision of the State Commissioner of Social Services on the grounds that the decision was arbitrary, capricious and affected by an error in law.
This proceeding may properly be passed upon in this court. Issues raised under CPLR 7803 (subd. 4) shall be transferred to the Appellate Division; this court may, however, itself pass on objections in point of law (CPLR 7804, subd. [g]). An issue raised under CPLR 7803 (subd. 3) shall be disposed of by the court in which the proceeding is commenced (CPLR 7804, subd. Eg]). CPLR 7803 (subd. 3) raises a question as to whether a determination was affected by an error of law or was arbitrary or capricious. Accordingly, this question may properly be disposed of by this court.
An analysis of section 352.5 of the regulations of the State Department of Social Services reveals the items of “ special need” which shall be granted in the amount necessary when *742 ever special circumstances are found to exist. The items of special need which are enumerated in that section are those expenses incidental to: (a) medical and dental care; (b) employment, work and job training; (c) securing employment; (d) education; (e) disability; (f) disabled veterans (g) housekeeping and child care services; (h) laundry services; (i) telephone services; (j) household equipment, furniture, furnishings and supplies; (k) storage charges; (1) rubbish disposal; (m) household moving expenses (n) payment for services and supplies already received; (o) insurance premiums; (p) transportation; (q) summer camps. The final category (r) provides for “ other ”. A local agency which decides to make allowance for any verified special needs shall record such items and the circumstances. (18 NYCRR 352.5.)
It is this category labeled 1 ‘ other ’ ’ that petitioner believes qualifies her to receive an allotment for which to pay the costs of publishing her summons in a proposed annulment action. It should be noted that all of the other subdivisions (Regulations of Dept, of Social Welfare, § 352.5, subds. [a]-[q]) are those which cover the basic necessities of life. Plainly, subdivision (r) of this same section refers to “other” similar basic necessities not catalogued in the preceding subdivisions. Petitioner’s request in this case for publication costs in a legal action does not, in this court’s opinion, fall within the broad outline of those needs considered basic necessities of life. No authority could be found which grants the Social Services agency power to pay these costs. Further, the local Social Services agency’s personnel is not equipped to make a ' determination as to the merits and advisability of such a contemplated legal action.
Moreover, this court has concluded that petitioner is entitled to apply for permission to prosecute her action as a poor person under article 11 of the CPLR.* This determination was made for the following reasons:
(1) The expenditure of public funds, whether it be under the aegis of the Department of Social Services or by direction of a Justice of the Supreme Court to a County Treasurer, is the same insofar as the taxpayers are concerned. However, an application similar to the instant one if made to the courts under the provisions of the poor person’s statute will give greater assurance to the public that any expenditure made of *743 its funds will be founded on facts and circumstances which, under the applicable laws of this 'State, are meritorious.
(2) Under the former provisions of the Civil Practice Act a person qualified to sue as a poor person was entitled to have an attorney assigned to conduct an action for him (Civ. Prac. Act, § 196). A poor person was defined as being one who was not worth $300 in cash (Civ. Prac. Act, § 199). The Rules of Civil Practice formulated the procedure by which a person petitioned the court to obtain leave to sue as a poor person (Rules Civ. Prac., rules 35, 36). These sections and rules of Civil Practice were strictly construed as being in derogation of the common law so the benefits conferred were not extended beyond the exact language of the sections. (La Barbera v. Hart & Crouse Co., 248 App. Div. 261, 262; People ex rel. King v. McNeill, 30 Misc 2d 566, 567.)
The successor provisions relating to poor persons contained in article 11 of the CPLR provide that the court in which an action is triable may grant permission to an individual to proceed as a poor person upon such party’s filing an affidavit showing his income and property and ‘ ‘ that he is unable to pay the costs, fees and expenses necessary to prosecute * * * the action” (CPLR 1101, subd. [a]). The CPLR further provides that a poor person shall not be liable for the payment of any costs or fees unless they are recovered by judgment or settlement had in his favor in which event the court may direct him to pay out of the recovery all or part of the costs and fees (CPLR 1102, subd. [d]).
Article 11 of the CPLR thus contains references to costs, fees and expenses necessary to prosecute the action (CPLR 1101, subd. [a], CPLR 1102, subd. [d]) which were not included in the applicable poor persons provision of the Civil Practice Act. Plainly, these references now contained in the CPLR must be construed by the courts to have been included by the Legislature with intent that they be given appropriate effect.
(3) The Civil Practice Act also provided that the county out of whose funds fees have been paid had a lien for the amount thereof upon any sums recovered (Civ. Prac. Act, § 1493). It is to be noted, however, that even though some sections of the Civil Practice Act (§§ 196, 199) and rules 35, 36 of the Rules of Civil Practice were strictly construed, this section (1493) was held to be remedial in nature and to be given a broad and liberal interpretation. Thus, an official stenographer was entitled, for preparing a transcript in a matrimonial action, to be paid by the County Treasurer. (Smith v. Smith, 2 N Y 2d 120, 124.)
*744 (4) Under subdivision 3 of section 1518 of the Civil Practice Act the legal fees for publication where publication is directed pursuant to law are disbursements which may be included in the bill of costs and were by that section considered “ costs ”. This language in the Civil Practice Act was carried verbatim in CPLR 8301 (subd. [a], par. 3). Accordingly, publication fees are ‘ ‘ costs ’ ’ under the CPLR.
(5) Historically, legal scholars believed that some reasonable provision should be contained in the law so as not to prevent duly qualified litigants from having their progress blocked because of their inability to pay printer’s bills. (36 Harv. L. Rev., Poverty and Civil Litigation, pp. 361, 400 [1923].)
(6) Costs of publication are no different in nature from the costs of stenographic minutes which have uniformly been held to be an appropriate county charge when the litigant has been permitted to prosecute as a poor person (Rocco v. City of New York, 283 App. Div. 1056) and
(7) Finally, CPLR 104 provides that the CPLR shall be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding. Under this "mandate, the privileges conferred by article 11 should not be narrowly but, rather, liberally construed.
Accordingly, the publication fees legally incurred in a matrimonial action are “ costs ” which may be an appropriate county charge under the direction of the court when a person has been granted permission to proceed as a poor person.
However, this court does not have pending before it an application to consider this petitioner as a poor person. The procedure to be followed in this Judicial Department on such an application has been set forth in Eagle Contrs. of Utica v. Black (5 A D 2d 954); Swirski v. Price (19 A D 2d 851); Jenks v. Murphy (21 A D 2d 346); Dowell v. Remmer (24 A D 2d 542).
The determination of the State Commissioner of Social Services is affirmed. The petition is denied, without costs.

 The court is not unmindful of Jeffreys v. Jeffreys (57 Misc 2d 416, later withdrawn, 58 Misc 2d 1045) in which the court concluded that article 11 of the CPLR did not authorize the payment of publication costs under similar circumstances.